LAW OFFICE OF STANLEY R. APPS
Stanley R. Apps (State Bar No. 309425)
3707 Poinciana Drive, No. 81
Santa Clara, CA 95051
(310) 709-3966
stan@appsatlaw.com

Attorney for Plaintiff Colette Calmelet

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLETTE CALMELET, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> BOARD OF TRUSTEES OF THE ) <br> CALIFORNIA STATE UNIVERSITY; ) <br> DAVID M. HASSENZAHL, Personally and in his ) <br> Official Capacity as Dean of the College of ) <br> Natural Sciences at California State University, ) <br> Chico; RICHARD L. FORD, Personally and in his ) <br> Official Capacity of Department Chair of the ) <br> Department of Mathematics and Statistics at ) <br> California State University, Chico, and DEBRA S. ) <br> LARSON, Personally and in her Official Capacity ) <br> as Provost of California State University, Chico, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No.: 2-19-cv-2537-MCE-DMC <br><br> FIRST AMENDED COMPLAINT FOR DISCRIMINATION AND RETALIATION <br><br><br> JURY TRIAL DEMANDED <br><br> INJUNCTIVE RELIEF SOUGHT |

## FIRST AMENDED COMPLAINT FOR DISCRIMINATION AND RETALIATION

The Plaintiff, Colette Calmelet (hereinafter "Dr. Calmelet" or "Plaintiff") hereby sues

Defendant, the Board of Trustees of the California State University ("Trustees" or "University" or

"Defendant") for discrimination on the basis of race, and retaliation for making complaints of racial

discrimination, in violation of Title VII of the Civil Rights Act of 1964, as amended. Plaintiff

further sues Dean David M. Hassenzahl (hereafter "Dean Hassenzahl" or "Dr. Hassenzahl"), personally and in his official capacity as Dean of the College of Natural Sciences at California State University, Chico ("CSU Chico"), for retaliation for complaints of racial discrimination and retaliation for Plaintiff's exercise of academic freedom protected by the First Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983, and further sues Dr. Richard L. Ford ("Dr. Ford"), personally and in his official capacity as Department Chair of Department of Mathematics and Statistics at CSU Chico, for retaliation for complaints of racial discrimination and retaliation for Plaintiff's exercise of academic freedom protected by the First Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983, and further sues Provost Debra S. Larson ("Provost Larson" or"Provost"), personally and in her official capacity as Provost of CSU Chico, for retaliation for complaints of racial discrimination and retaliation for Plaintiff's exercise of academic freedom protected by the First Amendment of the United States Constitution, in violation of 42 U.S.C. § 1983.

Plaintiff further states as follows:

## **PARTIES**

1.  Plaintiff Colette Calmelet is a natural person residing in Butte County, California, who is and has been employed at California State University, Chico ("CSU Chico" or "CSUC"), as a faculty member in the Department of Mathematics and Statistics.

2.  Defendant, the Board of Trustees of California State University ("CSU" or "Board of Trustees") is a governmental entity organized and existing under the laws of the State of California. The Board of Trustees controls and administrates CSU Chico, as well as all other campuses and facilities of the California State University system.

3.  Defendant David M. Hassenzahl is a natural person residing in Butte County, California, who is employed as Dean of the College of Natural Sciences at CSU Chico.

4.  Defendant Richard L. Ford is a natural person residing in Butte County, California, who at all times relevant to this Complaint was employed as Chair or co-Chair of the Department of Mathematics and Statistics at CSU Chico.

5. Defendant Debra S. Larson is a natural person residing in Butte County, California, who is employed as Provost of CSU Chico.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over Plaintiff's claims, and is a proper venue, because Plaintiff's claims arise under federal law and Defendants Hassenzahl, Ford and Larson reside in this district. Furthermore, Defendant Board of Trustees maintains a constant presence in this judicial district based on its control and administration of CSU Chico and other CSU campuses and facilities within this district.

7. Plaintiff filed a Charge of discrimination on the basis of race and retaliation for making complaints of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on June 11, 2018. Thereafter, Plaintiff filed an Amended Charge of discrimination and retaliation with EEOC on July 24, 2019. Plaintiff's Amended Charge incorporated and realleged all allegations of her initial EEOC charge, as well as alleging additional facts showing continuing racial discrimination and retaliation against Plaintiff.

8. On October 1, 2019, the United States Department of Justice issued a Notice of Right to Sue letter to Plaintiff, authorizing her to bring suit against Defendant under Title VII of the Civil Rights Act of 1964, as amended, within 90 days. A true and correct copy of the Notice of Right to Sue letter is attached hereto as **Exhibit A**.

## FACTS

9. Dr. Calmelet is and has been employed by CSU at the CSU Chico campus at all times relevant to this Complaint, beginning in August 2008 and continuing to the present.

10. Dr. Calmelet is a person of African (Black) descent.

11. Prior to being initially hired by CSU Chico, Dr. Calmelet visited the campus for a job interview in December 2007. During her campus visit, the Chair of the Hiring Committee, Dr. LaDawn Haws (hereinafter "Dr. Haws") was apparently surprised to learn that Dr. Calmelet is Black. On December 14, 2007, Dr. Haws stated at the departmental office, about Dr. Calmelet, that "she had expected to see a real French person" and was surprised to see

"someone Egyptian looking" when she met Dr. Calmelet. Dr. Haws laughed after making this statement.

12. On the same day, Dr. Haws stated to Dr. Calmelet that there were very few minority people on the CSU Chico campus and for that reason Dr. Calmelet would not like it there.

13. Despite Dr. Haws' remarks, Dr. Calmelet accepted a position as an Assistant Professor in CSU Chico's Department of Mathematics and Statistics.

14. After she began work at CSU Chico, Dr. Haws frequently demeaned Dr. Calmelet and spoke to her in an abusive and humiliating manner, including:

    a. Stating in front of colleagues that Dr. Calmelet does not understand anything about statistics;

    b. Stating in front of colleagues that Dr. Calmelet has no experience or understanding of teaching numerical analysis, and that her proposals regarding prerequisites for a Numerical Analysis course were therefore without value; and

    c. Stating in front of colleagues that problems Dr. Calmelet suggested for use on a Calculus II examination were "high school problems" and that Dr. Calmelet suggested them based on her lack of experience.

15. Based on Dr. Haws' frequent rudeness and dismissiveness, combined with her racial remarks in December 2007, Dr. Calmelet concluded that Dr. Haws held a racially motivated bias against Dr. Calmelet.

16. Dr. Calmelet was subjected to similarly humiliating treatment by other professors in the Department of Mathematics and Statistics, including Dr. Rick Ford ("Ford" or "Dr. Ford"), in his capacity as Chair of the Department of Mathematics and Statistics, and Dr. Jorgen Berglund ("Berglund" or "Dr. Berglund").

17. Drs. Haws, Ford and Berglund have regularly interrupted Dr. Calmelet during departmental faculty or committee meetings, causing her to be unable to complete statements or express ideas. They have not treated any other faculty member in this manner. Drs. Haws, Ford and Berglund have regularly dismissed Dr. Calmelet's ideas and contributions without giving

COMPLAINT FOR DISCRIMINATION AND RETALIATION

her time to speak, or have interrupted her to dismiss her ideas before she can finish expressing them.

18. The behavior of these three colleagues created a harassing and intimidating work environment for Dr. Calmelet.

19. Furthermore, the dismissive and disrespectful treatment of Dr. Calmelet by Drs. Haws, Ford, and Berglund has created an expectation and understanding among junior faculty that it is acceptable to interrupt Dr. Calmelet and to speak of her and her ideas in a dismissive and demeaning manner. Several junior faculty have treated Dr. Calmelet in a dismissive and disrespectful manner, despite her status as a senior colleague. No other faculty member in the Department of Mathematics and Statistics is regularly interrupted and disrespected by colleagues, whereas it has become commonplace and acceptable for junior colleagues in her department to treat Dr. Calmelet, despite her senior status, as though she were of lower rank and status than any other department member. Because Dr. Calmelet is the only member of the Department who is Black, it is difficult for her not to associate this demeaning treatment with her race.

20. Dr. Calmelet complained numerous times to the Dean of the College of Natural Sciences, Dr. David Hassenzahl ("Dean Hassenzahl") about hostile and unequal treatment she received from Drs. Haws, Ford, and Berglund, and some other faculty members. However, Dr. Calmelet saw no improvement of this situation, despite her complaints to Dean Hassenzahl. Dr. Calmelet also filed a Grievance in 2013 complaining of unequal and prejudicial treatment by Dr. Ford including discrimination based on her race.

21. Dr. Calmelet is the only tenured faculty member who was not given an opportunity to serve on any Hiring Committees during her 12 year employment at CSU Chico. As Department Chair, Dr. Ford twice prevented Dr. Calmelet from serving on the Applied Mathematics Hiring Committee, first in 2015 and again in 2018, despite the fact that Dr. Calmelet is one of only three active applied mathematicians in the department. As a result, faculty members who are not applied mathematicians served on the Applied Mathematics Hiring Committee instead.

22. The total exclusion of Dr. Calmelet, the only Black faculty member, from Hiring Committees, is a contributing factor to the shortage of minority faculty members, particularly faculty members of African descent, in the Department of Mathematics and Statistics.

23. In a separate instance of discrimination, Dr. Calmelet was prevented from completing her term as Chair of the Departmental Personnel Committee in the 2017-2018 academic year.

24. During meetings of the Departmental Personnel Committee, Dr. Berglund behaved in a rude and hostile manner toward Plaintiff. Thereafter, Plaintiff reported Dr. Berglund's disruptive and hostile conduct to Dean Hassenzahl. Plaintiff is unaware of any corrective action taken by Dean Hassenzahl, but Dr. Berglund's disrespectful, and distractive behavior continued.

25. When Dr. Berglund's lack of attention to deadlines caused a delay in submission and signing of a few Committee reports, Dean Hassenzahl blamed Dr. Calmelet for the delay. Dean Hassenzahl disregarded Dr. Calmelet's detailed report of the events, and continued his unjustified accusations against her.

26. As is her right as a member of this Committee, Dr. Calmelet wrote a Minority Report with regard to the committee's Performance Review of a tenure-track faculty member. The purpose of the Minority Report was to memorialize the differences between Dr. Calmelet's opinion and the opinions of the other Committee members as to the quality of this candidate's performance and provide developmental feedback to the candidate.

27. Dean Hassenzahl accused Dr. Calmelet of providing incorrect information in her Minority Report, and demanded that she censor and remove most of her opinions included in the Report. Dean Hassenzahl sent his messages, demanding changes to the Minority Report, to the entire Personnel Committee, the Department Chair, the College Personnel Committee Chair, and the Dean's Assistant.

28. Dean Hassenzahl's demands for extensive changes in the Minority Report were intended to humiliate Dr. Calmelet, undermine her role as Chair of Personnel Committee, and suppress Dr. Calmelet's opinions about the candidate in question.

29. Dean Hassenzahl's demands violated Dr. Calmelet's rights and responsibilities as a Personnel Committee member, according to CSU Chico policies and procedures governing

the faculty evaluation process. In addition, Dean Hassenzahl's actions represented an intrusive and unreasonable violation of Dr. Calmelet's academic freedom. Despite her agreement to remove the Minority Report, Dean Hassenzahl continued to retaliate against Dr. Calmelet for expressing her own opinion as a member of the Personnel Committee. Dean Hassenzahl and Dr. Ford met with Dr. Calmelet in person on February 7, 2018 to accuse her of "creating problems" in the tenure and promotion review process, and to accuse her again of writing a Minority Report with incorrect information. At the meeting, Drs. Hassenzahl and Ford prevented Dr. Calmelet from speaking in her own defense.

30. Notably, other members of the Department Personnel Committee who wrote Minority Reports in previous years have not been subjected to any censorship or retaliation.

31. Thereafter on February 12, 2018, Dean Hassenzahl temporarily suspended Dr. Calmelet from participating on the Personnel Committee based on an unfounded claim that she had "breached confidentiality" in her Minority Report for another candidate.

32. After Dr. Calmelet pointed out that she had not breached confidentiality in any way, Dean Hassenzahl raised a new accusation that Dr. Calmelet had caused "a large number of process errors" and "report inconsistencies". Dean Hassenzahl refused to provide any details about the nature of the alleged process errors or inconsistencies.

33. On February 14, 2018, while Dr. Calmelet was sick and was not on campus, Dean Hassenzahl and Dr. Ford met with the other members of the Department Personnel Committee. According to Dr. Ford, Dean Hassenzahl "directed the committee to replace its leadership for the remainder of the semester," despite the fact that most of the Committee work had already been completed. Notably, such a demand is not authorized by any policy or procedure of CSU.

34. As a result of Dean Hassenzahl and Dr. Ford's interference, and in conformance with the Dean's direct orders, the committee voted to remove Dr. Calmelet from her position as Committee Chair.

35. Dr. Calmelet complained to the CSU Chico Provost Dr. Debra Larson about Dean Hassenzahl's conduct. Provost Larson responded to the Complaint by stating that she "could

not take sides" in this matter. Provost Larson's response was false and unreasonable, given that the CSU Chico Provost has the role of supervising Faculty Affairs, and Dean Hassenzahl's unauthorized demand for the Department Personnel Committee to replace its leadership clearly fell within the category of Faculty Affairs.

36. Thereafter, on June 11, 2018, Dr. Calmelet filed her initial Charge of Discrimination and Retaliation with EEOC.

37. After Dean Hassenzahl learned of the Charge of Discrimination, he required Dr. Calmelet to come to a meeting at his office on September 24, 2018. He scheduled a conference room for this purpose and left the door open. During the meeting, Dean Hassenzahl angrily raised his voice at Dr. Calmelet a number of times, reprimanding Dr. Calmelet for having made a complaint to EEOC and implying she would suffer consequences if she continued pursuing said complaint.

38. Dr. Calmelet reported Dean Hassenzahl's hostile and threatening conduct to Provost Larson, but received no response.

39. Notably, Dr. Calmelet had applied for regular Promotion to the rank of Full Professor in September 2018.

40. Applicants for Promotion to Full Professor at CSU Chico are reviewed in three areas: Instruction (Teaching), Professional Growth and Achievement, and Other Contributions (Service). Applicants must be ranked as Effective in all three areas of review to be awarded Promotion to Full Professor. Applications are reviewed first by the Departmental Personnel Committee, then by the Department Chair, then by the College Personnel Committee, then by the Dean and finally by the President or designee.

41. At every level of review, the reviewers agreed that Dr. Calmelet's Instruction was Effective, and that her Professional Growth and Achievement was also Effective. However, at every level of review, the reviewers agreed with the Majority Report of the Department Personnel Committee ("Majority Report") (signed by two out of three Committee members) that Dr. Calmelet's Other Contributions (Service) to the University was only Adequate.

42. The Majority Report cited two main reasons to justify its rating of Adequate. The first was

incomplete *"evidence of quality of service."* The second was Dr. Calmelet's "abrupt termination of her service as Chair of RTP in 2017/18." (The term "RTP" refers to the Department Personnel Committee).

43. In her rebuttal to the Majority Report, Dr. Calmelet pointed out that she met and exceeded all requirements of the Department's Guidelines for a rating of Effective in Other Contributions (Service), and provided a detailed justification of meeting each of these requirements. Dr. Calmelet also demonstrated that the Majority Report's approach and findings were biased and unprecedented. In her rebuttal Dr. Calmelet further showed that the Majority Report had a number of inaccurate and misleading statements, and omissions, that serve only one purpose: to deny Dr. Calmelet's numerous accomplishments in Service in order to reduce her rating in this area.

44. In her rebuttal to the Majority Report, Dr. Calmelet also pointed out that the committee applied a different and less favorable evidentiary standard than had been applied to previous candidates, without providing proper notice to Dr. Calmelet regarding their use of a different evidentiary standard. This lack of notice of a major change in the manner of evaluating candidates and evaluation requirements is a violation of the University's rules and procedures for tenure and promotion.

45. Dr. Calmelet further pointed out that the Majority Report failed to follow departmental guidelines and rating criteria, and further, did not follow the practices established over many years in departmental personnel committees.

46. Notably, not a single point raised by Dr. Calmelet in her Rebuttal was addressed at any level of her evaluation.

47. Notably, before her application for promotion all Dr. Calmelet's evaluations were positive including her most recent periodic evaluation of Spring 2017 where Dr. Calmelet received positive evaluation in all areas, and was praised for her achievements in Service.

48. As stated above, the second reason that the Majority Report offered for its evaluation of Adequate in Service was Dr. Calmelet's "abrupt termination" of her service as Chair of the Department Personnel Committee for the 2017-18 Academic Year. Reviewers at both

COMPLAINT FOR DISCRIMINATION AND RETALIATION

departmental levels of review engaged in false and inappropriate speculations about the reasons for her removal as Chair of the Personnel Committee before the end of her term, offering these speculations as further support for unreasonably low rating of Dr. Calmelet.

49. Most notably, the Department Chair—despite knowing that Dr. Calmelet had been removed as Committee Chair by Dean Hassenzahl—unreasonably speculated that "committee chairs are always elected by the members of the committee" and therefore "We must conclude that the [Personnel] Committee voted to install a new chair in the middle of the year. . . . this is a cause for serious concern about the quality of service."

50. This speculation is preposterous in light of the fact that the Dean had demanded Dr. Calmelet's removal as Chair, at a meeting carried out behind her back while she was out sick. While it is technically true that the committee members then elected a replacement, the omission of the fact that the Dean was responsible for Dr. Calmelet's ouster causes the Department Chair's speculation to be materially misleading.

51. Dr. Hassenzahl failed to recuse himself from reviewing Calmelet's application for promotion to Full Professor, despite his recent threats to retaliate against her and his direct and malicious interference in her service as Chair of the Personnel Committee in the preceding academic year. Dean Hassenzahl too concluded that Calmelet should be denied Promotion to Full Professor based on an alleged lack of evidence of quality of service to the university. He also refused to recuse Drs. Ford, Haws and Berglund from reviewing Dr. Calmelet's application for promotion in non-compliance with university policy and previous practice.

52. Provost Larson ratified and participated in Dean Hassenzahl's retaliation against Dr. Calmelet. Provost Larson first failed to take appropriate action to rectify Hassenzahl's unreasonable and retaliatory conduct . She then caused Dr. Calmelet's application for Promotion to Full Professor to be denied despite Provost Larson's actual knowledge of Dean Hassenzahl's misconduct. This misconduct includes Hassenzahl's threatened and actual retaliation against Dr. Calmelet for her exercise of protected academic freedom. In light of Provost Larson's complete knowledge of Dean Hassenzahl's misconduct, it can only be concluded that she was a full participant in the retaliation against Dr. Calmelet.

53. In light of the Department Chair's actions to exclude Dr. Calmelet from serving on Hiring Committees, as well as the Dean's unjustified interference in her performance as Chair of the Personnel Committee, it is unreasonable, unjust and discriminatory that Plaintif was denied Promotion to Full Professor based on an alleged incomplete "evidence of quality of service" to the University. Furthermore, there is very close temporal proximity between Plaintiff's charge of discrimination to EEOC in June 2018, Dean Hassenzahl's public threats of retaliation on 09/24/2018, and the unreasonable denial of her application for Promotion in June 2019. Dr. Calmelet applied for Promotion on 09/21/2018; and though the denial was not finalized until June 2019, multiple levels of review had issued recommendations to deny her application, on spurious and unprecedented grounds, by December 2018.

54. Notably, one member of the Department Personnel Committee issued a Minority Report, noting that since 2011 Dr. Calmelet had served productively on the Department's Curriculum Committees, Strategic Planning Committee, Equipment Committee, Personnel Committees, Assessment Committee, Part Time Faculty Evaluation Committee and College Algebra Course Development Committee, as well as serving on the college/university's Student Learning Fee Advisory Committee and the College of Natural Sciences Faculty Leaves and Development Committee (for five years). Dr. Calmelet also took on a leadership role in Curriculum Committees (for 2 years), Equipment Committee, Personnel Committee, and as Assessment Coordinator of the Math Department assessment program. Based on this extensive record of service, the Minority Report indicated that her contribution was sufficient to rank her Effective in the area of Service, so that she deserved Promotion to Full Professor.

**COUNT ONE: DISCRIMINATION ON THE BASIS OF RACE**

(**as to Defendant Board of Trustees of the California State University**)

55. Plaintiff hereby reincorporates and realleges paragraphs 9 through 54 hereinabove, as if fully set forth herein.

56. When Dr. Calmelet visited CSU Chico for a job interview, Dr. Haws, Chair of the Hiring Committee, expressed her surprise that Dr. Calmelet was of African descent; Dr. Haws

admitted that "she had expected to see a real French person" and advised Dr. Calmelet that she would probably dislike CSU Chico because there were very few minorities there.

57. Once Dr. Calmelet began working at CSU Chico, Dr. Haws humiliated Dr. Calmelet in front of colleagues by stating repeatedly that Dr. Calmelet lacked knowledge or experience in her areas of expertise and of subjects that she taught (including Calculus, Statistics and Numerical Analysis).

58. Both Dr. Rick Ford (Chair, Department of Mathematics and Statistics) and Dr. Jorgen Berglund also participated in demeaning treatment of Dr. Calmelet, publicly dismissing her contributions at faculty meetings and setting an expectation that junior faculty should also treat Dr. Calmelet disrespectfully.

59. For twelve years, Dr. Calmelet was the only tenure-line faculty member not allowed to serve on any departmental hiring committees; further, Dr. Calmelet was prevented from serving on hiring committees charged with hiring faculty in Applied Mathematics, even though Dr. Calmelet is one of only three applied mathematicians in the department.

60. When Dr. Calmelet was Chair of the Departmental Personnel Committee, Dr. Berglund behaved in a rude and hostile manner toward Dr. Calmelet at committee meetings. Thereafter, Dr. Calmelet reported Dr. Berglund's disruptive and hostile conduct to Dean Hassenzahl. Dr. Calmelet is unaware of any corrective action taken by Dean Hassenzahl, but Dr. Berglund's disrespectful, and distractive behavior continued. Thereafter, when Dr. Berglund's lack of attention to deadlines caused a delay in submission and signing of a few Committee reports, Dean Hassenzahl blamed Dr. Calmelet for the delay.

61. The unequal treatment of Dr. Calmelet based upon her race continued with the Dean Hassenzahl's unjustified and unauthorized demand that her colleagues on the Departmental Personnel Committee must replace the leadership of the committee by removing Dr. Calmelet as Chair.

62. The unequal treatment of Dr. Calmelet based on her race culminated in the denial of her application for Promotion to Full Professor, based on a false and unreasonable claim that her service to the University was not Effective, when in fact Dr. Calmelet met and exceeded all

requirements for a rating of Effective in Service. In addition, Dr. Calmelet had been excluded from or removed from key service roles at the Department based upon her race. Notably, Dr. Calmelet is the only Black faculty member in the Department, and the only one who was excluded from any hiring decisions. Dr. Calmelet is the only faculty member who was subjected to a censorship and retaliation for writing Minority Reports. Dr. Calmelet is the only faculty member who was removed from being the Chair of the Department Personnel Committee.

63. Dr. Calmelet is the only faculty member in her Department who met or exceeded all requirements of departmental Guidelines for promotion (to Full Professor) and was denied said promotion. Applications of other faculty members in her department were given considerably more favorable consideration. Since her arrival at the department Dr. Calmelet is the only faculty member who was denied regular promotion.

64. The unequal treatment based on her race caused Dr. Calmelet financial harm, reputational harm, heightened stress at work, emotional anguish, and mental distress.

WHEREFORE, Dr. Calmelet prays for relief against Defendant the Board of Trustees of the California State University as follows:

   a.   For the equitable relief of an order requiring Defendant to promote Dr. Calmelet to the rank of Full Professor;

   b.   For an award of back pay in the amount of the difference between the pay Dr. Calmelet did receive and the pay she would have received had she been promoted to the rank of Full Professor

   c.   For an award of compensatory damages for mental suffering and emotional injury;

   d.   For an award of attorney's fees;

   e.   For an award of interest, including pre-judgment interest, at the highest legal rate;

   f.   For reimbursement of all costs of suit incurred, including expert witness fees; and

   g.   For such other and further relief as the Court finds just and proper.

COMPLAINT FOR DISCRIMINATION AND RETALIATION

**COUNT TWO:  RETALIATION FOR THE EXERCISE OF ACADEMIC FREEDOM**

**(as to Defendants Dean Hassenzahl, Dr. Ford and Provost Larson)**

65. Plaintiff hereby reincorporates and realleges paragraphs 22 through 54 hereinabove, as if fully set forth herein.

66. When Dr. Calmelet served as Chair of the Personnel Committee, both Dean Hassenzahl and Dr. Ford found unreasonable fault with her performance, and ultimately orchestrated her removal from the committee.

67. This removal was the end result of a process that violated both CSU Chico policies and procedures and Dr. Calmelet's exercise of academic freedom:

    a.  At the beginning of the process Dr. Ford requested that Dr. Calmelet provide him with the names of Committee members responsible for writing drafts of Evaluation Reports for Tenure and Promotion. When Dr. Calmelet answered that she could not do that Dr. Ford insisted on his demand and sent her a threatening message. Later when Dr. Calmelet submitted her Minority Report for one of the candidates for Tenure and Promotion Dr. Ford sent Dr. Calmelet an angry message with criticism of her Report and accusation of unprofessionalism.

    b.  After Personnel Committees submitted their reports Dean Hassenzahl demanded that Dr. Calmelet censor her Minority Report regarding the Performance Review of a tenure-track faculty member along Dean Hassenzahl's directions. Dr. Calmelet was ultimately pressured to rescind the report, after Dean Hassenzahl exerted continual pressure on her to remove most her statements and opinions from said report.

    c.  In addition, Dean Hassenzahl's objections to the Minority Report derived from his disagreement with the Report's content.

    d.  In an effort to justify his violation of Dr. Calmelet's academic freedom, Dean Hassenzahl, accompanied by Dr. Ford, met with Dr. Calmelet to make various unfounded accusations about Dr. Calmelet's job performance as Personnel Committee Chair while not allowing Dr. Calmelet to speak and defend herself.

e.  Such accusations included the unsupported and untrue claims that Dr. Calmelet created unnecessary problems in the tenure and promotion review process and that she wrote a Minority Report containing incorrect information.

f.  Later, Dean Hassenzahl raised another accusation that Dr. Calmelet caused a "breach of confidentiality" of a faculty member. However, when Dr. Calmelet pointed out that no confidentiality of any kind was breached, Dean Hassenzahl changed his accusation and charged Dr. Calmelet with a "large number of process errors" and report and inconsistencies.

g.  Ultimately, Dean Hassenzahl orchestrated Dr. Calmelet's removal as Chair of the Personnel Committee by "[directing] the committee to replace its leadership for the remainder of the semester," even though most committee work already had been completed. Dean Hassenzahl's action was not authorized by any CSU policy or procedure.

h.  Because of Dean Hassenzahl's interference, the Personnel Committee voted to remove Dr. Calmelet from her position as Committee Chair. This removal was later cited as justification for denying Dr. Calmelet promotion to Full Professor based on her allegedly insufficient evidence of quality of service to the university.

68.  The exercise of academic freedom by a professional academic like Dr. Calmelet constitutes protected expressive activity protected by the First Amendment to the Constitution of the United States.

69.  Dean Hassenzahl deprived Dr. Calmelet of her First Amendment right to academic freedom by instructing her to censor and ultimately remove  her Minority Report.

70.  Dean Hassenzahl retaliated against Dr. Calmelet for her actual and attempted expression of academic freedom by demanding her removal as Personnel Committee Chair. Dr. Calmelet's removal from Committee Chair was a serious adverse employment action that was later used to justify denial of Dr. Calmelet's application for promotion.

71. Dean Hassenzahl further retaliated against Dr. Calmelet for her actual and attempted expression of academic freedom by causing her to be denied Promotion to Full Professor based on the pretext that there was "insufficient evidence of quality of service" and "in particular evidence of leadership" as a result of her removal from the role of Chair of the Personnel Committee.

72. According to information and belief Provost Larson and her office directed and coordinated Dean Hassenzahl's actions regarding Dr. Calmelet's Minority Report(s). Provost Larson supported and ratified the deprivation of Dr. Calmelet's First Amendment Rights, as well as the retaliation for her actual and attempted expression of said rights.

73. The retaliation caused Dr. Calmelet financial harm, reputational harm, heightened stress at work, emotional anguish, and mental distress.

WHEREFORE, Dr. Calmelet prays for relief against Defendants David Hassenzahl (personally and in his capacity as Dean), Richard Ford (personally and in his capacity as Department Chair), and Debra Larson (personally and in her capacity as Provost) as follows:

a. For the equitable relief of an order requiring Provost Larson to grant Dr. Calmelet promotion to the rank of Full Professor;

b. For an order requiring Provost Larson to award back pay to Dr. Calmelet in the amount of the difference between the pay Dr. Calmelet did receive and the pay she would have received had she been promoted to the rank of Full Professor;

c. For an award of compensatory damages for mental suffering and emotional injury (to be paid from the personal monies of Defendants Hassenzahl, Ford and Larson);

d. For an award of attorney's fees;

e. For an award of interest, including pre-judgment interest, at the highest legal rate;

f. For reimbursement of all costs of suit incurred, including expert witness fees; and

g. For such other and further relief as the Court finds just and proper.

- 15 -

**COUNT THREE: RETALIATION FOR A COMPLAINT OF RACIAL DISCRIMINATION**

**MADE TO THE UNITED STATES EQUAL OPPORTUNITY COMMISSION**

**(as to Defendant Board of Trustees of the California State University)**

74. Plaintiff hereby reincorporates and realleges paragraphs 9 through 64 hereinabove, as if fully set forth herein.

75. On 06/11/2018 Plaintiff filed an initial Charge of Discrimination and Retaliation with EEOC.

76. On September 24, 2018 Dean Hassenzahl called Dr. Calmelet in for an open-door meeting during which he loudly and angrily reprimanded her for filing a complaint with EEOC.

77. During this meeting Dean Hassenzahl insinuated that Dr. Calmelet would suffer consequences in the department if she continued to pursue her EEOC complaint.

78. In June 2019 Dr. Calmelet was denied promotion to Full Professor, based on recommendations from multiple levels of review, including recommendations by Dr. Ford, Dean Hassenzahl and Provost Larsen.

79. Dr. Hassenzahl recommended denial of Plaintiff's application for Promotion. Also, based on knowledge and belief, Dr. Hassenzahl acted to influence other reviewers to recommend denial of Plaintiff's application for Promotion to Full Professor, and to recommend a finding that her application failed to present sufficient "evidence of quality of service."

80. All levels of review charged with evaluating Dr. Calmelet's application for promotion echoed the Majority Report written by members of her department's Personnel Committee. The Majority Report justified its denial by rating Dr. Calmelet's service as Adequate, an evaluation based on Dr. Calmelet's ostensibly incomplete "evidence of quality of service" as well as the "abrupt termination" of her service as Chair of the Department Personnel Committee in Academic Year 2017-18.

81. Dr. Calmelet never received any response to her written rebuttal of the Majority Report. Her rebuttal pointed out that the Majority Report was biased, and contained a number of inaccurate and misleading statements and omissions; failed to follow departmental guidelines and rating criteria; failed to follow university rules and procedures governing evaluations for promotion; and departed from established departmental practices.

82. Dr. Calmelet is the only faculty member in her Department who, despite the fact that she met or exceeded all the requirements of Departmental Guidelines for the rating of Effective in Service, was nonetheless rated only Adequate in Service.  Dr. Calmelet demonstrated that she made numerous substantial contributions to her service to university in spite of her racially-motivated exclusion from Hiring Committees and her unauthorized removal from the role of Chair of the Personnel Committee before the end of her term.

83. Dr. Calmelet is the only faculty member in her department who was denied promotion despite the fact that she met or exceeded all requirements of departmental Guidelines for promotion (to Full Professor). Applications of all other faculty members in her department were given considerably more favorable consideration. Since her arrival at the department Dr. Calmelet is the only faculty member who was denied a regular promotion.

84. Provost Larson ratified and participated in Dean Hassenzahl's retaliation against Dr. Calmelet. First Provost Larson failed to address Dr. Calmelet's complaints about the Dean's retaliatory conduct, stating that she "could not take sides" in the matter. Provost Larson also failed to recuse Dean Hassenzahl  from reviewing Dr. Calmelet's application for promotion. Then Provost Larson denied Dr. Calmelet's application for promotion to Full Professor. The Provost denied promotion to Dr. Calmelet, despite knowing that Dean Hassenzahl had failed to recuse himself from the evaluation process; had threatened Dr. Calmelet with retaliation; and had in fact retaliated against her for making a complaint of racial discrimination and retaliation to the United States Equal Employment Opportunity Commission.

85. Retaliation against Dr. Calmelet is ongoing, and continues up to this day.  Plaintiff is subjected to more unfavorable treatment from current Department Chair Dr. Haws, than any of her colleagues. Dr. Calmelet's request at one of recent department meetings to revisit last year department decisions was treated by Dr. Haws  quite differently from a similar request made by another faculty (Dr. Berglund). Dr. Calmelet is the only faculty member who was not assigned to teach any upper division courses in Spring 2021 despite her request for three courses (first time in her 12 years at CSUC). All other colleagues were granted their requests.

86. The retaliation caused Dr. Calmelet financial harm, reputational harm, heightened stress at work, emotional anguish, and mental distress.

WHEREFORE, Dr. Calmelet prays for relief against all Defendants as follows:

a.  For the order granting Dr. Calmelet promotion to the rank of Full Professor;

b.  For an order awarding back pay to Dr. Calmelet in the amount of the difference between the pay Dr. Calmelet did receive and the pay she would have received had she been promoted to the rank of Full Professor;

c.  For equitable relief in the form of an order requiring Defendant CSU to maintain a work environment for Dr. Calmelet that is free of discrimination and retaliation;

d.  For an award of compensatory damages for mental suffering and emotional injury;

e.  For an award of attorney's fees;

f.  For an award of interest, including pre-judgment interest, at the highest legal rate;

g.  For reimbursement of all costs of suit incurred, including expert witness fees; and

h.  For such other and further relief as the Court finds just and proper.

DATED: March 13, 2020

Stanley R. Apps
3707 Poinciana Drive, No. 81
Santa Clara, CA 95051
stan@appsatlaw.com
(310) 709-3966
*Attorney for Plaintiff Colette Calmelet*

COMPLAINT FOR DISCRIMINATION AND RETALIATION

Exhibit A



**U.S. Department of Justice**

**Civil Rights Division**

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

CERTIFIED MAIL
7018 1830 0000 1246 6717

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4701*
*Washington, DC 20530*

October 01, 2019

Ms. Colette Calmelet
741 Hastings Street
Chico, CA  95973

Re:  EEOC Charge Against California State University Chico
        No. 550201801076

Dear Ms. Calmelet:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires. Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

   The investigative file pertaining to your case is located in the EEOC San Francisco District Office, San Francisco, CA.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                                          Sincerely,

                                                    Eric S. Dreiband
                                              Assistant Attorney General
                                                  Civil Rights Division

                                          by *Karen L. Ferguson*
                                                    Karen L. Ferguson
                                            Supervisory Civil Rights Analyst
                                            Employment Litigation Section

cc: San Francisco District Office, EEOC
     California State University Chico