UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLETTE CALMELET,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; DAVID M. HASSENZAHL, Personally and in his Official Capacity as Dean of the College of Natural Sciences at California State University, Chico; RICHARD L. FORD, Personally and in his Official Capacity of Department Chair of the Department of Mathematics and Statistics at California State University, Chico, and DEBRA S. LARSON, Personally and in her Official Capacity as Provost of California State University, Chico,<br><br>Defendants. | No.: 2:19-cv-02537-MCE-DMC<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Colette Calmelet ("Plaintiff") filed this lawsuit under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983, claiming that Defendants violated her civil rights when they racially discriminated and retaliated against her for authoring a dissenting viewpoint about a tenure-track faculty member. Now before the Court is Defendants' Motion to Dismiss Count Two—Retaliation for the Exercise of Academic Freedom—of Plaintiff's First Amended Complaint ("FAC"), brought under Federal Rule of

1

Civil Procedure 12(b)(6) on grounds that Count Two fails to state a claim upon which relief can be granted. Defendants further argue, to the extent Plaintiff has stated a viable retaliation claim in Count Two, that the individually-named Defendants are entitled to qualified immunity and that the Eleventh Amendment to the United States Constitution precludes Defendants from being sued in their official capacities except to the extent Plaintiff seeks prospective injunctive relief.[1] Finally, Defendants claim that Plaintiff has not asserted sufficient factual allegations to state a viable retaliation claim against Defendant Debra Larson in any event. For the reasons set forth below, Defendants' Motion (ECF No. 14) is GRANTED.

## BACKGROUND[2]

Plaintiff is a faculty member in the Department of Mathematics and Statistics at Defendant California State University, Chico ("CSU Chico"). Pl.'s FAC, ECF No. 13, at ¶ 1. During the 2017–18 academic year, Plaintiff served as the Chair of the Departmental Personnel Committee. Id. at ¶ 23. After completing a Performance Review for a tenure-track professor, Plaintiff disagreed with the Committee's final evaluation. Id. at ¶ 26. Plaintiff recorded her disagreements with the candidate's final evaluation in a Minority Report ("Report")—which is within her right as a Committee member. Id. The purpose of the Report was to highlight Plaintiff's conflicting evaluation of the candidate's performance, as well as to provide developmental feedback to the candidate. Id.

Defendant David Hassenzahl ("Hassenzahl"), CSU Chico's Dean of the College of Natural Sciences, subsequently accused Plaintiff of including inaccurate information

---

[1] In her Opposition, Plaintiff agrees that her claims against Defendants in their official capacities are limited to prospective injunctive relief only. Pl.'s Am. Opp., ECF No. 22, 8:6-11. Consequently, Defendants' argument in that regard will not be further considered in this Memorandum and Order.

[2] The following of recitation of facts is taken, sometimes verbatim, from Plaintiff's FAC. ECF No. 13.

within the Report and demanded that Plaintiff remove most of her opinions.  Id. at ¶ 27.  In addition, Hassenzahl sent his demand that Plaintiff censor her Report to the entire Departmental Personnel Committee, the Department Chair, the College Personnel Committee Chair, and the Dean's Assistant.  Id.  Although Plaintiff complied with Hassenzahl's demands, Hassenzahl and Defendant Richard Ford ("Ford"), the Chair of CSU Chico's Department of Mathematics and Statistics, met with Plaintiff on February 7, 2018, and accused her of creating problems in the review process and providing false information in the Report.  Id. at ¶ 29.

A few days after Plaintiff's meeting with Defendants Hassenzahl and Ford, Hassenzahl claimed that Plaintiff breached confidentiality in her Report and subsequently suspended Plaintiff from her position as Chair of the Departmental Personnel Committee on February 12, 2018.  Id. at ¶ 31.  When Plaintiff debunked Hassenzahl's falsified breach of confidentiality claim, Hassenzahl withdrew that claim and raised two new accusations against Plaintiff: first, that Plaintiff caused a large number of process errors, and second, that her Reports were inconsistent.  Id. at ¶ 32.

On February 14, 2018, two days after Hassenzahl's new accusations, and while Plaintiff was sick and absent from campus, Hassenzahl and Ford directed the Departmental Personnel Committee to remove Plaintiff from her position as Chair.  Id. at ¶ 33.  Ultimately, and without basis in CSU Chico policy or procedure, the Departmental Personnel Committee complied with that directive by removing Plaintiff from her position as Committee Chair.  Id.

Later in 2018, the Departmental Personnel Committee, the Department Chair, the College Personnel Committee, CSU Chico's Dean, and its President agreed to deny Plaintiff's promotion to Full Professor.  Id. at ¶¶ 42, 67.  The Majority Report filed in support of that decision cited Plaintiff's abrupt departure as Chair of the Departmental Personnel Committee as one of the two reasons to withhold Plaintiff's promotion.  Id. at ¶ 42.  The other reason was Plaintiff's incomplete evidence of quality of service.  Id.
///

Plaintiff subsequently filed her FAC on March 3, 2020, and alleged three claims. First, Plaintiff, who is black, claims she was discriminated against on the basis of her race. Second, she alleges retaliation for the exercise of her academic freedom in violation of the First Amendment. Third and finally, Plaintiff asserts she was also retaliated against for filing a complaint of racial discrimination with the United States Equal Opportunity Commission. Id. at pgs. 11, 14, 16. Defendants' Motion to Dismiss Count Two of Plaintiff's FAC, for First Amendment retaliation, followed and is now before the Court for adjudication.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating

///

that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

///

1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

## ANALYSIS

In order to determine whether Plaintiff has stated a viable First Amendment retaliation claim, the Court must consider the following five questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). Plaintiff has the burden of showing the first three elements. Id. at 1070–71. If she is successful in so doing, the burden shifts to Defendants to show the remaining two elements. Id. at 1071–72. Each element is necessary. Dahlia v. Rodriguez, 735 F.3d 1060, 1092 n.4 (9th Cir. 2013). In other words, a failure to show one element results in the dismissal of Plaintiff's claim. Desrochers v. City of San Bernardino, 572 F.3d 703, 719 (9th Cir. 2014) (holding that the failure to meet the public concern element resulted in the dismissal of the First Amendment Retaliation claim). As shown below, Plaintiff fails to meet the threshold element—namely, her Report does not relate to a matter of public concern invoking protection under the First Amendment

### A.    Plaintiff's Report Does Not Touch Upon a Public Concern

Determining whether speech pertains to a public concern for First Amendment purposes is a question of law, not fact. Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 964 (9th Cir. 2011) (citing Connick v. Myers, 461 U.S. 138, 148 n.7 (1983)). Speech touches upon a matter of public concern when the speech "fairly can be said to relate to 'any matter of political, social, or other concern to the community.'" Id. (quoting

6

Huppert v. City of Pittsburg, 574 F.3d 696, 703 (9th Cir. 2009)).  In other words, whether the speech involves "'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government'" must be considered.  Desrochers, 572 F.3d at 710 (quoting McKinley v. Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)).  Speech is not of public concern when it deals with "individual personnel disputes and grievances and . . . would be of no relevance to the public's evaluation of the performance of governmental agencies." Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003) (quoting McKinley v. Eloy, 705 F.2d 1110, 1114 (9th Cir. 1983)).  Ultimately, determining whether speech qualifies for First Amendment protection requires an analysis of its content, form, and context. Connick v. Myers, 461 U.S. 138, 147 (1983).  Of these three considerations, content is the most important.  Johnson, 658 F.3d at 965.

        Applying this analysis to the present matter, Plaintiff's Report does not touch upon matters of public concern.  The content of Plaintiff's Report outlines differences in opinion between Plaintiff and the majority of the Departmental Personnel Committee regarding its evaluation of a tenure-track professor's performance.  FAC ¶ 26.  Thus, the dispute falls squarely into an "individual personnel dispute and grievance" which does not relate to a public concern.  Coszalter v. City of Salem, 320 F.3d at 973.

        Plaintiff nonetheless argues the Report documented a desire on her part to ensure that candidates for tenure receive a fair evaluation process and acquire the necessary mentoring.  Pl.'s Am. Mem. P. & A. in Opp'n Defs.' Mtn. Dismiss, ECF No. 22, at 4:16–21.  Plaintiff analogizes her case to Demers v. Austin to show that the content of her Report addressed "the preferable manner of operating the school system" and thus constituted a public concern.  Demers v. Austin, 746 F.3d 402, 416 (9th Cir. 2014).  In Demers, a professor distributed a 7-step plan that recommended seven steps to improve the communications program at Washington State University.  Id.  Notably, the 7-step plan "made broad proposals to change the direction and focus of the school" rather than "focus on personnel issue[s] or internal dispute[s]."  Id.  Moreover, the 7-step plan did not

7

"address the role of particular individuals . . . or voice personal complaints." Id. Here, Plaintiff's argument is inapposite because the content of her Report solely focused on internal personnel issues of a particular candidate, rather than the overall structure or direction of CSU Chico. FAC ¶ 26. Additionally, Plaintiff's Report did not expose any governmental wrongdoing or corruption within CSU Chico that establish the Report as a matter of public concern. See Dahlia, 735 F.3d at 1067– 68 (citing cases that found speech touched upon a public concern when the speech exposed illegal activity or corruption within a government agency).

Furthermore, the form of Plaintiff's Report erodes any claim that the Report touches upon a matter of public concern. Speech limited to a private audience, rather than expressed publicly, "'weighs against a claim of protected speech.'" Desrochers, 572 F.3d at 714 (quoting Roe v. City & County of San Francisco, 109 F.3d 578, 585 (9th Cir. 1997)). Views expressed "inside [an employee's] office, rather than publicly, is not dispositive," however, in finding that speech is not protected. Garcetti v. Ceballos, 547 U.S. 410, 420 (2006).

Here, Plaintiff published her Report for two groups to read: the candidate for tenure and the Departmental Personnel Committee. The fact that the Report consequently has a very limited intended, and actual, audience diminishes Plaintiff's argument that it touches upon a matter of public concern. The Report was neither available, nor addressed, to the public. See Demers, 746 F.3d at 416 (highlighting that Demers sent his 7-step plan to the President and Provost of Washington State University, "to other faculty members, to alumni, to friends . . . to newspapers," and published it on his website).

Finally, the context of the Report suggests Plaintiff did not intend for the Report to reach the public's eye. To determine the context of the speech, an inquiry into the employee's motivation for making the speech is highly relevant. Desrochers, 572 F.3d at 714 (citing Gilbrook v. City of Westminister, 177 F.3d 839, 866 (9th Cir. 1999)). Specifically, "whether the speech was made to 'further some private interest'" such as

8

dissatisfaction with an employment situation, and "whether the speech was made in the context of a workplace 'power struggle.'" Id.  Plaintiff's stated purpose for her Report, as articulated in the FAC, was to highlight the difference between Plaintiff's and the Committee's evaluation of a tenure-track professor.  FAC ¶ 26.  Therefore, the context of Plaintiff's Report was her disapproval of an individual employment action that ultimately led to a workplace power struggle between Hassenzahl and Plaintiff.  That context does not fall within the purview of a public concern.

Given that Plaintiff fails to establish the threshold element of a First Amendment retaliation claim, the Court does not need to consider the further elements required to state a viable retaliation claim, and it declines to do so.  See Desrochers, 572 F.3d at 719.  Nor is it necessary to determine whether, in the event Plaintiff was successful in stating a retaliation claim, that claim was subject to qualified immunity on the part of the individual Defendants or stated sufficient facts against Defendant Larson.  Those contentions all presuppose the viability of a First Amendment retaliation claim, which Plaintiff has failed to yet demonstrate.

## CONCLUSION

For all the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 14, is GRANTED, with leave to amend.[3]  Should Plaintiff wish to rectify the deficiencies of her Second Count, she may do so by filing a Second Amended Complaint not later than twenty (20) days following the date this Memorandum and Order is electronically filed.

///
///
///
///

---

[3] Having determined that oral argument was not of material assistance, the Court submitted this matter on the briefs in accordance with E.D. Local Rule 230(g).

Failure to file an amended pleading within those parameters will result in the dismissal of Plaintiff's Second Count with prejudice and without further notice.

IT IS SO ORDERED.

Dated:  September 3, 2020

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE